STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, V. DUNBAR STATE BANK: E. J. DEMPSTER, RECEIVER, APPELLEE: MONTO LOWREY ET AL., APPELLANTS.

FILED JULY 10, 1931. NO. 27713.

*Edwin Moran*, for appellants.

*C. M. Skiles* and *Albert S. Johnston*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

In the case pending in the district court for Otoe county over the receivership of the Dunbar State Bank, Monto Lowrey and Della M. Lowrey, his wife, were given leave to intervene, and filed an amended petition of intervention on February 10, 1930, in which they ask to recover from the receiver of said bank the sum of $2,652.16, which they had paid to John M. Eiser, special agent of the guaranty fund commission, who was in charge of said bank on January 26, 1928, being the principal of a note for $2,500 and the interest thereon of $152.16, which note was dated March 15, 1927; and they ask to have their claim when allowed offset against a note of $2,388.81, which is secured by a real estate mortgage which was given to the receiver of said bank on March 17, 1928, and that they be paid the difference of $281.67 in cash. The district court found against the interveners and dismissed their action.

A large number of notes had been given by the interveners to the Dunbar State Bank; some of these had been sold and transferred to other banks. Upon March 8, 1927, the Chase National Bank returned a note of the interveners of $2,500 to the Dunbar State Bank, and on March 11, 1927, as shown by a photostat copy of the letter attached to the New York deposition, its president mailed back interveners' note for $2,500, dated March 1, 1927, payable September 1, 1927, at 7 per cent. interest, to replace the note maturing for the same amount. No other note was given by the appellants on the same day, and the former note returned from New York was surrendered to the makers.

The said Dunbar State Bank went into the hands of the guaranty fund commission on the 4th day of April, 1927, and Thomas Murray, its president, absconded March 14, 1927, and was not apprehended for many months, and at the time of the trial had been arrested and was then serving sentence in the penitentiary. It is admitted by

all parties that some of the series of notes signed by the intervener and his wife were duplicated, and that he paid to the officers in charge of said bank a number of notes.

William H. Pitzer, an attorney of Nebraska City, received the note from the Chase National Bank for collection and brought suit against the interveners. Upon examination by experts it was found that the Chase National Bank note dated March 1, 1927, was a genuine note and not a forgery, and that the interveners had no defense to the suit which was brought against them to collect said note. By this action they are endeavoring to recover from the receiver the amount paid by them on a note of the same amount which they now believe was a duplicate. It is found that said note of $2,500 paid by them during the time that the said bank was being operated as a going concern by the guaranty fund commission was a voluntary payment, and that the money they paid thereon never came into the hands of the receiver of the bank and was exhausted by the officers of the guaranty fund commission during the time they were operating the bank. The payment was made by the interveners without compulsion, mistake, fraud, duress, coercion or extortion on the part of the special agent of the guaranty fund commission, and the amount paid by the interveners was applied as agreed and the notes paid were surrendered to the interveners at the time of the payment.

1. It has been recently held by this court that, where one has voluntarily, with knowledge of the facts, paid a disputed demand, he cannot ordinarily recover it back on the ground of its invalidity. *Meyer v. Rosenblatt & Son,* 119 Neb. 471. And in the case of *Blain v. Willson,* 32 Neb. 302, where a debtor voluntarily paid a note tainted with usury, he cannot maintain an action to recover such usurious interest.

2. It is claimed that the notes paid to the guaranty fund commission were paid after a discussion with Mr. Eiser, the special agent in charge, in which discussion it

was thought by the intervener that the note then held by the Chase National Bank, which had been sold to it by the Dunbar State Bank, was a forgery; and it is now claimed that the note presented and paid to the guaranty fund commission was in truth a duplicate note executed without consideration, while the note held in New York City was the true and genuine note. There is no doubt that Mr. Eiser was known by the interveners to have no personal knowledge of the fact, as he had not seen the note in the Chase National Bank, and that any statements he made about said note were only a matter of opinion.

Mrs. Lowrey testified that at the time payment was made Mr. Eiser suggested that they look carefully into the matter of the note held by the Chase National Bank, and upon which it was demanding payment, before they should make payment. Mr. Eiser denied in his evidence that he had stated that the Chase National Bank note was a forgery, but suggested that on a number of occasions he had told the interveners that it might be a forgery, and that they should examine into the matter carefully before paying it. It is clear in this case that Mr. Eiser's statements were a mere expression of his opinion, and not a misrepresentation of fact.

This court has held that the rule that charges a party with notice of the truth in all cases where he makes positive representations of existing facts does not apply to representations which in their nature are mere expressions of opinion. *Hamilton Brown Shoe Co. v. Milliken,* 62 Neb. 116.

3. The interveners knew exactly the note they were paying to the special agent of the guaranty fund commission at the time they paid it, and the exact notes they paid were delivered to them. It may be admitted that the interveners at that time thought that the note about which the Chase National Bank had been corresponding with them was a forgery. It is exceedingly unfortunate that they did not have the Chase National Bank note forwarded

for their inspection prior to the payment of these other notes. Caution would have required that they do that, but this court now has no other alternative but to deny the application of the interveners. The Chase National note, it is admitted, is a perfectly *bona fide* note in the hands of an entirely innocent purchaser, purchased for full value before maturity. It is an old rule of law that, when one of two innocent parties must suffer, the one whose oversight or laches has made the occurrence of the event possible must suffer, rather than the one who is entirely without blame.

When the maker of a genuine note pays a duplicate note of the same amount, after personal examination thereof, to the agent in charge of a bank taken over by the guaranty fund commission, the duplication not being known to said agent, the laches and carelessness of the reputed maker thereof in failing to detect the duplication charges him with the loss, rather than to cast it upon the depositors of the failed bank now in receivership.

The court are unanimous in arriving at the conclusion that the order of the district judge in finding for the defendant receiver and dismissing the cause of action of the interveners at their costs is the only conclusion which could be arrived at in this matter.

AFFIRMED.